IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BENJAMIN BALANDRAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-14-CV-153-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C of the Local Court Rules of the Western District of Texas. For the reasons below, the Commissioner's decision is AFFIRMED.

I. PROCEDURAL HISTORY

On April 1, 2011, Plaintiff, age 64 with previous work experience as a carpenter, protectively filed applications for DIB and SSI in which he alleged disability since January 1, 2009 due to back

problems, "arms and legs,"and high cholesterol. (R. 146-158, 160, 161).[1] After his applications were denied initially and again upon reconsideration, Plaintiff requested a hearing. (R. 57-62, 68-71, 72-73, 77-78). On October 12, 2012, Plaintiff appeared with his attorney for a hearing before an Administrative Law Judge ("ALJ"). (R. 29-46). His applications for benefits were denied by the ALJ's written decision issued on November 28, 2012. (R. 17-22). On February 26, 2014, the Appeals Council affirmed the ALJ's decision to deny benefits, thereby making it the final decision of the Commissioner. (R. 1-5).

## II. ISSUE PRESENTED

Plaintiff contends the ALJ's residual functional capacity[2] determination is not supported by substantial evidence.

## III. DISCUSSION

A. Standard of Review

This Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence on the record as a whole, and whether the proper legal standards were applied in evaluating the evidence. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of

---

[1] Reference to the record of administrative proceedings is designated by "(R. [page number(s)])."

[2] Residual functional capacity ("RFC") is defined in the regulations as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545, 416.965; SSR 96-8p, 1996 WL 374184 (July 2, 1996).

credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues de novo. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the impairment or combination of impairments prevents the claimant from doing any other work. 20

C.F.R. §§ 404.1520, 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2012. (R. 19). The ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. *Id.* At the next step, the ALJ determined Plaintiff has severe impairments consisting of mild C5-6 disc degeneration, hyperlipidemia (controlled), erectile dysfunction, gastroesophageal reflux disease, and arthritis. *Id.* The ALJ further determined Plaintiff's impairments of depression and thrombocytopenia are non-severe impairments. *Id.*

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19-20). Before reaching step four, the ALJ found Plaintiff retains the RFC to

perform the full range of medium work.[3] (R. 20-21). Based on Plaintiff's RFC, the ALJ found he is able to perform his past relevant work as a carpenter. (R. 22). Therefore, the ALJ determined Plaintiff was not disabled. *Id.*

D. Analysis of Plaintiff's Claim

Plaintiff contends the ALJ's RFC finding for the full range of medium work is not supported by substantial evidence because the ALJ failed to properly consider or include additional limitations based on Plaintiff's pain. Plaintiff argues his subjective complaints of pain and limitations, coupled with radiological findings, treatment records, and the consultative examiner's assessment, support a conclusion that his functional abilities are significantly more limited than found by the ALJ in her RFC assessment. Plaintiff further posits that had the ALJ properly accommodated his conditions, she likely would have found him able to perform a limited range of light or sedentary work which would have directed a conclusion that he was disabled under the Medical-Vocational Guidelines codified at 20 C.F.R. Part 404, Subpart P, Appendix 2.

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. §§ 404.1545(a); 416.945(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996). The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite his physical and mental limitations. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1545, 416.945, 404.1529, 416.929; SSR 96-8p. The

---

[3] Medium work involves lifting more than 50 pounds at a time with frequent lifting or carrying of objects weighing 25 pounds or more. If someone can do medium work, he can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In support of his position, Plaintiff cites to treatment notes which he contends show that he received treatment for osteoarthritis[4] on multiple occasions from 2008 through 2012.[5] A review of the cited records show Plaintiff's history and assessment of osteoarthritis ("OA") was noted by the treatment provider, typically by checking a box on a pre-printed form. Plaintiff does not cite to any particular treatment for OA that he received during this period, and the records do not indicate Plaintiff was being treated for this condition with medication, pain relievers, or physical therapy. Importantly, Plaintiff does not point to any limitations due to OA that were imposed by any treating sources.

Plaintiff also relies on a January 2010 x-ray that showed scoliosis[6] and spondylosis[7] of the thoracic spine, and a May 2011 x-ray that showed C5-C6 disc degeneration and a small inferior degenerative spur. (R. 301, 498). The record shows Plaintiff underwent chest x-rays on January 20,

---

[4] Osteoarthritis is a noninflammatory degenerative joint disease seen mainly in older persons. DORLAND'S ILLUS. MEDICAL DICTIONARY 1286 (29th ed. 2000).

[5] Without further elaboration, Plaintiff cites to 35 pages of the administrative record: 221, 223, 229, 233, 235, 236, 239, 245, 246, 247, 250, 251, 255, 256, 257, 258, 260, 261, 325, 328, 331, 422, 423, 430, 531, 532, 550, 564, 565, 658, 662, 665, 666, 669, 670.

[6] Scoliosis is an appreciable lateral deviation in the normally straight vertical line of the spine. DORLAND'S ILLUS. MEDICAL DICTIONARY 1612 (29th ed. 2000).

[7] Spondylosis is a general term for degenerative spinal changes due to osteoarthritis. DORLAND'S ILLUS. MEDICAL DICTIONARY 1684 (29th ed. 2000).

2010 related to a diagnosis of polycythemia.[8] (R. 301). The report of results shows the x-rays revealed normal cardiac size and configuration without evidence of left heart failure and clear lungs without infiltrates, pleural effusion, or pneumothorax. *Id.* The report noted "[s]coliosis and spondylosis thoracic spine." *Id.* The impression was no cardiac abnormalities. *Id.*

On May 25, 2011, Plaintiff underwent x-rays of his cervical spine ordered by Mauricio Jimenez, M.D., the consultative examiner, to evaluate Plaintiff's complaints of back pain. (R. 498). The report indicates no fracture or subluxation was seen. *Id.* The vertebral bodies were of normal height, and the soft tissues were normal. *Id.* A small anterior/inferior spur was seen at C6, and a small anterior longitudinal ligament calcification was seen at C5-C6. *Id.* Mild narrowing of the C5-C6 intervertebral disc space was noted. *Id.* The conclusion was mild C5-C6 disc degeneration and a small C6 anterior inferior degenerative spur. *Id.*

Plaintiff further relies on the May 24, 2011 assessment of the consultative examiner of chronic upper back pain, cervical back pain, thoracic back pain, bilateral arm pain at the elbow level, and bilateral knee pain. (R. 502). Although the impression was of pain in the stated areas, Dr. Jimenez' consultative evaluation of Plaintiff's allegations of disability due to back pain, arm pain, and leg problems revealed no major functional limitations. (R. 500-502). Upon examination, Plaintiff had no edema, atrophy, or deformities in his legs. (R. 501). His deep tendon reflexes and gait were normal. *Id.* He was able to squat, heel walk and tiptoe walk normally. *Id.* His grip was normal in both hands. *Id.* He was able to reach and pick up. *Id.* Extension and flexion of both wrists showed no abnormalities. *Id.* Examination of the elbows revealed no atrophies or

---

[8] Polycythemia is an increase in the total red cell mass of the blood. DORLAND'S ILLUS. MEDICAL DICTIONARY 1429 (29th ed. 2000).

deformities. (R. 502). Forward flexion of the spine was beyond 80 degrees. Extension and lateral movements of the spine were normal. There was no atrophy, no deformity, and no major limitation of movement in the cervical spine. *Id.* Normal range of motion of the shoulders was noted. *Id.* The knees were without crepitus or deformity. *Id.* The range of motion in both knees was 140 degrees, with pain on stretching of the ligaments. *Id.* In sum, Dr. Jimenez' medical findings do not coincide with Plaintiff's subjective complaints of extreme functional limitations due to pain.

The ALJ discussed in detail Plaintiff's "completely normal" physical examination by Chinwe Nduka, M.D. on September 14, 2012. (R. 20-21, 690-692). Dr. Nduka's notes indicate Plaintiff was a new patient who was seeking a new primary care physician. (R. 690). As noted by the ALJ, Dr. Nduka reported Plaintiff appeared well, was well nourished, and in no apparent distress. (R. 21, 691). Plaintiff reported no musculoskeletal problems. (R. 690).

Upon examination, Plaintiff's neck, back, and extremities were normal. Indeed, as to Plaintiff's musculoskeletal presentation, Dr. Nduka reported, "[n]o misalignment, asymmetry, crepitation, defects, tenderness, masses, effusion, decreased range of motion, instability, atrophy or abnormal strength or tone in the head, neck, spine, ribs, pelvis, or extremities." (R. 691). Plaintiff was diagnosed with external hemorrhoids, controlled hyperlipidemia, and right ear wax. *Id.* Clearly, Dr. Nduka's treatment notes support the ALJ's observation that "the only indication of possible mechanical issues is the mild C5-C6 disc degeneration." (R. 21).

Finally, Plaintiff also relies on subjective evidence consisting of his testimony at the hearing that he is in constant pain, can only walk a block, cannot stand for more than a half an hour, and cannot lift anything heavy, (R. 35-38); his reports of severe pain to his legs, neck, and arms; his inability to perform everyday tasks; his inability to lift heavy items or to stand or stay in one position

for a long period of time; and, his inability to walk for more than a block before needing to rest. (R. 169, 174). Although Plaintiff testified he has extreme functional limitations and experiences constant pain in his body at a level 10, on a pain scale of 1 to 10, the objective findings do not corroborate his subjective complaints. *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989) (claimant's subjective complaints must be corroborated, at least in part, by objective evidence). As noted by the ALJ, Plaintiff takes only over the counter medications (Tylenol and BenGay) for pain relief, and there is no indication Plaintiff was ever prescribed any medications for pain control. Despite his claims of disabling pain, Plaintiff testified he had not seen a doctor about the pain in his back, legs, and hands. (R. 38). It is well-established that the ALJ is not precluded from relying upon lack of treatment as an indication of non-disability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ reviewed the medical evidence and considered Plaintiff's subjective complaints of pain. She gave substantial weight to the RFC assessment by Randal Reid, M.D., a state agency medical consultant.[9] (R. 21, 513-520). On August 4, 2011, Dr. Reid determined Plaintiff retained the RFC for a full range of medium work. In support of his conclusions, he cited to, *inter alia*, the findings at the consultative examination by Dr. Jimenez on May 24, 2011. Dr. Reid did not find Plaintiff to be wholly credible as his alleged limitations were not fully supported by the evidence of record. (R. 520). The ALJ concurred with this credibility assessment. (R. 21). The ALJ properly found Dr. Reid's RFC assessment[10] to be entirely consistent with the evidence and the testimony

---

[9] State agency medical consultants are experts in disability evaluations, and, while not binding, the ALJ must consider their opinions. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

[10] Significantly, Dr. Reid's findings were affirmed on September 23, 2011 by James Wright, M.D. (R. 544).

adduced at the hearing. *Id.*

It is the task of the ALJ to weigh the evidence. *Chambliss*, 269 F.3d at 523 n.1. The ALJ carefully considered all of Plaintiff's subjective complaints regarding the intensity, persistence, and limiting effects of his symptoms. She determined based on the medical and other evidence of record that, while Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms, his complaints were not entirely credible. (R. 21). The ALJ's determination that the medical evidence is more persuasive than the claimant's testimony is precisely the kind of determination the ALJ is best positioned to make. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Moreover, credibility determinations are entitled to great deference. *Newton*, 209 F.3d at 448. There is no prejudicial error shown in the ALJ's analysis of Plaintiff's RFC.

The task of this Court is to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Chambliss*, 269 F.3d at 523, citing *Greenspan*, 38 F.3d at 240. The medical records, the opinion of the state agency medical consultant, and the testimony of the VE provide substantial evidence for the ALJ's determination that Plaintiff is not disabled because he can perform his past relevant work as a carpenter. As substantial evidence supports the ALJ's decision, it must be affirmed. *Spellman*, 1 F.3d at 360.

## CONCLUSION

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this 9th day of September, 2015.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE